IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0733

_____

**FILED**

**April 17, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
STATE OF WEST VIRGINIA,
Petitioner

v.

THE HONORABLE ROBERT A. BURNSIDE, JR.,
Judge of the Circuit Court of Raleigh County; and
RICHARD E. HARDISON, JR.,
Respondents

_____

Appeal from the Circuit Court of Raleigh County
The Honorable Robert A. Burnside, Jr., Judge
Criminal Case No. 12-F-293-B

WRIT GRANTED

_____

Submitted: March 26, 2014
Filed: April 17, 2014

Patrick Morrisey
Attorney General
Scott E. Johnson, Esq.
Senior Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

Timothy J. LaFon, Esq.
Ciccarello, DelGuidice & LaFon, PLLC
Charleston, West Virginia
Counsel for the Respondent
Richard E. Hardison, Jr.

JUSTICE KETCHUM delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a concurring Opinion.
JUSTICE LOUGHRY concurs and reserves the right to file a concurring Opinion.
JUDGE SIMS dissents and reserves the right to file a dissenting Opinion.
CHIEF JUSTICE DAVIS, deeming herself disqualified, did not participate.

JUSTICE WORKMAN, deeming herself disqualified, did not participate.
JUDGE HATCHER, sitting by temporary assignment.
JUDGE SIMS, sitting by temporary assignment.

SYLLABUS BY THE COURT

*W.Va. Code* § 62-1D-9(d) of the *West Virginia Wiretapping and Electronic Surveillance Act*, *W.Va. Code* § 62-1D-1, *et. seq*. [1987], is intended to prevent attorney-client privileged communications from being monitored by wiretapping or through electronic surveillance. The third clause of *W.Va. Code* § 62-1D-9(d), considered in conjunction with the first two clauses of the statute, and within the *West Virginia Wiretapping and Electronic Surveillance Act* and Title III of the *Omnibus Crime Control and Safe Streets Act*, 18 U.S.C. § 2510, *et. seq*., was intended to prohibit the interception of all attorney-client privileged communications "emanating from the place of employment of any attorney at law licensed to practice law in this state." The third clause of *W.Va. Code* § 62-1D-9(d) was not intended to prevent law-enforcement officers from intercepting wire, oral or electronic communications occurring within or emanating from a law office that involve criminal conduct.

Justice Ketchum:

The Petitioner, the State of West Virginia, invokes this Court's original jurisdiction in prohibition to challenge the June 26, 2013, order of the Circuit Court of Raleigh County suppressing an audio recording which the State sought to introduce in its criminal prosecution of Respondent Richard E. Hardison, Jr., a licensed lawyer in West Virginia ("Lawyer Hardison"). The Raleigh County Sheriff's Department sent a confidential informant, equipped with a body wire, to meet with and attempt to purchase cocaine from Lawyer Hardison. The confidential informant allegedly discussed and purchased cocaine from Lawyer Hardison in his Beckley, West Virginia law office.

After being indicted on two criminal counts related to this alleged drug transaction, Lawyer Hardison moved to suppress the audio recording of his conversation with the confidential informant arguing that the recording violated the *West Virginia Wiretapping and Electronic Surveillance Act, W.Va. Code* § 62-1D-9(d) [1987]. The circuit court agreed and granted Lawyer Hardison's motion to suppress the audio recording.

The State subsequently filed the present writ arguing that the circuit court's interpretation of *W.Va. Code* § 62-1D-9(d) was erroneous. The State argues that the purpose of *W.Va. Code* § 62-1D-9(d) is to prevent attorney-client *privileged communications* from being intercepted by wiretapping or through electronic surveillance. Because there is no claim that the conversation between Lawyer Hardison

1

and the confidential informant was protected under the attorney-client privilege, the State argues that the circuit court's order suppressing the audio recording was in error.

After review, we agree with the State and conclude that *W.Va. Code* § 62-1D-9(d) is intended to prevent attorney-client *privileged communications* from being intercepted by wiretapping or through electronic surveillance. There is no claim that the recorded conversation between Lawyer Hardison and the confidential informant was attorney-client in nature. Because Lawyer Hardison was not acting as an attorney during his conversation with the confidential informant, we grant the requested writ of prohibition.

## I. Factual & Procedural Background

On April 6, 2012, the Raleigh County Sheriff's Department sent a confidential informant, equipped with a body wire, to meet with and attempt to obtain cocaine from Lawyer Hardison. The confidential informant was an acquaintance and client of Lawyer Hardison.[1] The State alleges that the confidential informant picked Lawyer Hardison up at his residence and drove to Lawyer Hardison's law office. The

---

[1]According to the appendix-record, Lawyer Hardison represented the confidential informant on two matters, one criminal and one civil. The criminal matter was dismissed on March 13, 2012, prior to the April meeting in which the audio recording was made. The civil matter was pending when the April meeting occurred. It was dismissed on May 15, 2012.

audio recording allegedly includes conversations between the confidential informant and Lawyer Hardison that occurred in the confidential informant's automobile and continued as the two men entered Lawyer Hardison's law office. The State alleges that the confidential informant purchased cocaine from Lawyer Hardison and that the sale occurred in Lawyer Hardison's law office.[2] They did not discuss legal matters or matters that were attorney-client in nature.

The confidential informant agreed to wear the body wire that recorded his conversation with Lawyer Hardison. The *West Virginia Wiretapping and Electronic Surveillance Act* ("*West Virginia Wiretapping Act*" or "the *Act*"), *W.Va. Code* § 62-1D-1 [1987], *et. seq.*, permits the use of an electronic surveillance device when one party to the communication consents to the use of a recording device. W.Va. Code § 62-1D-3(e) of the *West Virginia Wiretapping Act* states:

> (e) It is lawful under this article for a person to intercept a wire, oral or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or the constitution or laws of this state[.]

---

[2]The parties disagree on the quantity of cocaine that was allegedly purchased. The State's brief asserts that the transaction was an attempt to obtain "two 8-balls [of cocaine worth] approximately five hundred dollars[.]" Lawyer Hardison's brief states "the alleged drug transaction was for approximately .93 of a gram of cocaine and not two 8-balls."

This one-party consent rule is an exception to the *Act's* general requirement that the interception of wire, oral or electronic communications is only permissible *when authorized by a designated circuit court judge*. The procedure for designating specific circuit court judges to authorize electronic surveillance is set forth in W.Va. § 62-1D-7 [1987] of the *Act*. It states:

> The chief justice of the supreme court of appeals shall, on an annual basis, designate five active circuit court judges to individually hear and rule upon applications for orders authorizing the interception of wire, oral or electronic communications: Provided, That no designated circuit judge may consider any application for such an order if he or she presides as judge of the circuit court of the county wherein the applied for installation would occur or of the county wherein the communications facility, line or device to be monitored is located.

Pursuant to the *West Virginia Wiretapping Act*, a prosecutor (W.Va. Code § 62-1D-8) or an authorized member of the state police (W.Va. Code §§ 62-1D-11(a)(1)) may make an application to a designated circuit court judge for a warrant to intercept a communication with an electronic surveillance device. The *Act* permits a designated circuit court judge to issue a warrant **ONLY IF** the evidence and argument presented by the applicant establishes that:

> (1) There is probable cause to believe that one or more individuals are committing, have committed, or are about to commit one or more of the particular offenses enumerated in section eight of this article;
>
> (2) There is probable cause for belief that particular communications concerning such offense or offenses will be obtained through the interception;

4

(3) Normal investigative procedures have been tried and have failed and reasonably appear to be unlikely to succeed if attempted again, or that to do so would be unreasonably dangerous and likely to result in death or injury or the destruction of property; and

(4) There is probable cause to believe that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of the offense, or offenses are leased to, listed in the name of, or commonly used by this person.

W.Va. Code § 62-1D-11(c).

Lawyer Hardison was indicted on two felony counts related to the alleged cocaine transaction with the confidential informant: (1) delivery of a controlled substance (cocaine) in violation of *W.Va. Code* § 60A-4-401 [1983]; and (2) conspiracy to commit the felony offense of delivering a controlled substance (cocaine) in violation of *W.Va. Code* § 61-10-31 [1971].

Lawyer Hardison filed a motion to suppress the audio recording of the conversation between himself and the confidential informant, asserting that the recording was made in violation of *W.Va. Code* § 62-1D-9(d) of the *West Virginia Wiretapping Act*. *W.Va. Code* § 62-1D-9(d) states:

> An otherwise privileged wire, oral or electronic communication intercepted in accordance with, or in violation of, the provisions of this article does not lose its privileged character: Provided, That when an investigative or law-enforcement officer, while engaged in intercepting wire, oral or electronic communications in the manner authorized by this article, intercepts a wire, oral or electronic communication and it becomes apparent that the conversation is attorney-client in nature, the investigative or law-

5

enforcement officer shall immediately terminate the monitoring of that conversation: Provided, however, That notwithstanding any provision of this article to the contrary, no device designed to intercept wire, oral or electronic communications shall be placed or installed in such a manner as to intercept wire, oral or electronic communications emanating from the place of employment of any attorney at law licensed to practice law in this state.

The circuit court held a suppression hearing on Lawyer Hardison's motion. The State argued that *W.Va. Code* § 62-1D-9(d) was intended to protect attorney-client privileged communications and "not [the] misconduct of lawyers[.]" Further, the State contended that Lawyer Hardison's reading of the statute would lead to an absurd result: it would prevent the use of audio and video recordings of individuals engaging in criminal conduct from being admitted into evidence merely because the criminal conduct occurred in a law office. Conversely, counsel for Lawyer Hardison argued that the plain language of the statute barred the audio recording because the conversation occurred in Lawyer Hardison's law office.

The circuit court agreed with Lawyer Hardison and ruled that "[t]he statute's proviso prohibits the type of recordings that occurred in this case. . . . It is ORDERED that audio, video[3] or both recordings made in defendant's law office are

---

[3]There is no video recording of the meeting between the confidential informant and Lawyer Hardison. According to Lawyer Hardison's brief, the confidential informant was equipped with an audio and video recording device, but the video recording device malfunctioned.

6

SUPPRESSED and the state may not use them at trial." While the circuit court's order suppressed the audio recording, it denied Lawyer Hardison's request to suppress the confidential informant's testimony relating to the conversation at issue.

After entry of the circuit court's June 26, 2013, order suppressing the audio recording, the State filed the present writ.

## II. Standard of Review

This Court addressed our standard of review for a writ of prohibition in a criminal matter in Syllabus Point 5 of *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992):

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

"The writ of prohibition will issue only in clear cases, where the inferior tribunal is proceeding without, or in excess of, jurisdiction." Syllabus, *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925). *See also* Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction,

7

or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."); Syllabus Point 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1.").

Further, in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With the foregoing in mind, we turn to the parties' arguments.

8

### III. Analysis

In this writ, we are asked to examine *W.Va. Code* § 62-1D-9(d) which is contained in the *West Virginia Wiretapping Act*, *W.Va. Code* § 62-1D-1, *et. seq.* By way of background, the *West Virginia Wiretapping Act* was enacted by the West Virginia Legislature in 1987. The *Act* was patterned after Title III of the *Omnibus Crime Control and Safe Streets Act*, 18 U.S.C. § 2510, *et. seq.* ("Title III"). *See State v. Mullens*, 221 W.Va. 70, 86, n.34, 650 S.E.2d 169, 185, n.34 (2007). Title III was enacted by Congress in 1968[4] and it "sets forth comprehensive standards governing the use of . . . electronic surveillance by both governmental and private agents." *Mullens*, 221 W.Va. at 74, 650 S.E.2d at 173. Pursuant to Title III, 18 U.S.C.A. § 2516(2), states are authorized to "adopt coordinate statutes permitting the interception of wire, oral or electronic communications, and to grant greater, but not lesser, protection than that available under federal law." *Id.* at 79, 650 S.E.2d at 178. As one legal scholar observed, "Congress did not intend to preempt the field of wiretap legislation [through Title III], but rather, it

---

[4]In 1986, Congress amended Title III through the enactment of the *Electronic Communications Privacy Act*, 18 U.S.C.A. § 3121, *et. seq.*, in an effort to reflect technological advancements in the area of electronic surveillance. *See Snow v. DirecTv, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). Congress amended Title III again with the enactment of the *Communications Assistance for Law Enforcement Act of 1994*, 47 U.S.C.A. § 1001, *et. seq.* This Act "requires telecommunications carriers to ensure that their systems are technically capable of enabling law enforcement agencies operating with proper legal authority to intercept individual telephone calls and to obtain certain call-identifying information." *Mullens*, 221 W.Va. at 74, n. 12, 650 S.E.2d at 173, n.12 (internal citation omitted).

intended to allow states to enact legislation in this area as long as state laws are not more permissive than the federal scheme." Angela M. Burdine, *Criminal Procedure; Electronic Surveillance*, 27 Pac. L.J. 614, 620-21 (1996).

Turning to the *West Virginia Wiretapping Act*, *W.Va. Code* § 62-1D-6 provides that "evidence obtained in violation of the provisions of this article shall not be admissible in any proceeding."[5] The issue we must resolve is whether the audio recording of the conversation between the confidential informant and Lawyer Hardison was made in violation of *W.Va. Code* § 62-1D-9(d) of the *West Virginia Wiretapping Act*.

Lawyer Hardison argues that this Court should apply the plain language of the final clause of *W.Va. Code* § 62-1D-9(d) and find that the circuit court correctly suppressed the audio recording at issue. By contrast, the State argues that the final clause of *W.Va. Code* § 62-1D-9(d) cannot be construed in a vacuum and must be considered within the context and purpose of the entire statute. The purpose of *W.Va. Code* § 62-

---

[5]Title III contains a similar provision to *W.Va. Code* § 62-1D-6. This provision is set forth at 18 U.S.C. § 2515, which states:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

1D-9(d), according to the State, is to protect attorney-client privileged communications. The State contends that applying the plain language of the final clause of *W.Va. Code* § 62-1D-9(d) without considering the context of the entire statute would produce an absurd result – it would transform a law office "into a sanctuary for criminal activity."

This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). *See also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). With these rules of statutory construction in mind, we turn to *W.Va. Code* § 62-1D-9(d).

11

The first clause of *W.Va. Code* § 62-1D-9(d) – "[a]n otherwise privileged wire, oral or electronic communication intercepted in accordance with, or in violation of, the provisions of this article does not lose its privileged character"– is straightforward and states that a privileged communication does not lose its privileged status simply because it is intercepted pursuant to the *West Virginia Wiretapping Act*.

The second clause of *W.Va. Code* § 62-1D-9(d) states:

> That when an investigative or law-enforcement officer, while engaged in intercepting wire, oral or electronic communications in the manner authorized by this article, intercepts a wire, oral or electronic communication and it becomes apparent that the conversation is attorney-client in nature, the investigative or law-enforcement officer shall immediately terminate the monitoring of that conversation[.]

The second clause contemplates a scenario in which a law-enforcement officer is engaged in intercepting wire, oral or electronic communications between a lawyer and his/her client. The second clause does not place an absolute bar on a law-enforcement officer intercepting a communication between a lawyer and his/her client, rather, it only bars intercepting such a conversation when it "becomes apparent that the conversation is attorney-client in nature."

While the first and second clauses of *W.Va. Code* § 62-1D-9(d) are straightforward, we find that an ambiguity arises in the third clause of the statute. The third clause of *W.Va. Code* § 62-1D-9(d) states:

> Provided, however, That notwithstanding any provision of this article to the contrary, no device designed to intercept wire, oral or electronic communications shall be placed or installed in such a manner as to intercept wire, oral or

12

electronic communications emanating from the place of employment of any attorney at law licensed to practice law in this state.

The first clause of *W.Va. Code* § 62-1D-9(d) addresses privileged communications generally. The second clause addresses attorney-client privileged communications. The final clause appears to place a prohibition on *any* communication, privileged or otherwise, occurring between *any* persons located in a law office. As demonstrated by the differing interpretations given the final clause by the parties to this appeal, the final clause's intended meaning is not abundantly clear when considered within the context of the first two clauses of the statute.[6] Because the final clause of this statute is preceded by two clauses addressing privileged communications, we find that the final clause is susceptible to differing constructions, and that "reasonable minds might be uncertain or disagree as to its intended meaning." *Sizemore*, 202 W.Va. at 596, 505 S.E.2d at 659. Accordingly, we find that *W.Va. Code* § 62-1D-9(d) is ambiguous.

"A statute that is ambiguous must be construed before it can be applied." Syllabus Point 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va.

---

[6]We note, however, that "the fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning." *State v. Gibson*, 226 W.Va. 568, 571, 703 S.E.2d. 539, 542 (2010) (internal citation omitted).

13

108, 219 S.E.2d 361 (1975). Similarly, this Court has held that "the initial step in such interpretative inquiry [of a statute] is to ascertain legislative intent." Syllabus Point 1, in part, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). Further, "[w]hen a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction. Absent explicatory legislative history for an ambiguous statute . . . this Court is obligated to consider the . . . overarching design of the statute." *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995).

In ascertaining the legislative intent behind *W.Va. Code* § 62-1D-9(d), we find that the legislative history[7] of the *West Virginia Wiretapping Act* provides a general

---

[7]The *Acts of the Legislature of West Virginia* states that *W.Va. Code* § 62-1D-1, *et. seq.*, is

> AN ACT to amend chapter sixty-two of the code of West Virginia, one thousand nine hundred thirty-one, as amended, by adding thereto a new article, designated article one-d, relating to wiretapping and certain electronic surveillance; authorizing the interception of certain oral, electronic and wire communications under specified controlled circumstances; providing certain definitions of terms with respect thereto; establishing certain limits and procedures relating thereto; requiring court orders as a condition precedent to any such interception or installation of any wiretap, pen register, trap and trace device or similar device; designated judges; providing for civil immunities with respect thereto; providing exceptions; and providing criminal and civil penalties for violation of certain sections.

1987 W.Va. *Acts* 1000-1001.

14

description of the statute, but it does not address the specific meaning or purpose of *W.Va. Code* § 62-1D-9(d). Because the *Act's* legislative history does not provide guidance, we examine the law the *West Virginia Wiretapping Act* was patterned after, Title III.

The first two clauses of *W.Va. Code* § 62-1D-9(d) have analogous provisions in Title III. Like the first clause of *W.Va. Code* § 62-1D-9(d), Title III states that a privileged communication does not lose its privileged status simply because it is intercepted. *See* 18 U.S.C. § 2517(4) [1986] ("No otherwise privileged wire, oral or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter, shall lose its privileged character.").

The second clause of *W.Va. Code* § 62-1D-9(d) and 18 U.S.C. § 2518(5) of Title III recognize that some privileged communications may be overheard in the course of wiretapping or electronic surveillance and both take steps to minimize this type of interception. The second clause of *W.Va. Code* § 62-1D-9(d) directs such surveillance to cease when it becomes apparent that a communication is attorney-client in nature. Similarly, when electronic surveillance is authorized pursuant to Title III, 18 U.S.C. § 2518(5) requires that efforts be made to minimize the interception of communications that are not intended to be intercepted. Further, Title III "requires the temporary termination of surveillance when the intercepted communication is not relevant to the investigation . . . this minimization provision . . . diminishes the interception of privileged communications as much as possible." Terrence Kossegi and Barbara Phair, *The Clergy-*

15

*Communication Privilege in the Age of Electronic Surveillance*, 12 St. John's J. Legal Comment, 241, 253 (1996). *See also* Clifford S. Fishman and Anne T. McKenna, *Wiretapping and Eavesdropping*, § 8:125 (2d ed. 1995) (stating that the effect of Title III minimization language severely limits interception of privileged communications).

Unlike the first two clauses of *W.Va. Code* § 62-1D-9(d), Title III does not contain an analogous provision to the third clause of the statute. Title III contains no prohibition on the use of wiretapping or electronic surveillance of *all* communications emanating from a law office. The absence of such a provision in Title III demonstrates that Congress chose not to treat communications emanating from a law office differently than communications emanating from other locations.

One rationale for this lack of a provision in Title III prohibiting wiretapping or electronic surveillance of all communications emanating from a law office is the recognition that lawyers engaging in alleged criminal activity should be investigated and prosecuted to the same extent as non-lawyers:

> A license to practice law is not a license to commit crime. When an attorney uses his position to aid an organized crime client in ongoing criminal activity or in running a criminal enterprise, few would disagree that the government has the right, indeed the duty, to investigate and prosecute that person to at least the same extent they would his principal.

Steven Chananie and Ronald Goldstock, *'Criminal' Lawyers: The Use of Electronic Surveillance and Search Warrants in the Investigation and Prosecution of Criminal Wrongdoing*, 136 U. Pa. L. Rev. 1855 (1988).

16

Based on the foregoing, we find that Title III contains no provision barring the use of wiretapping or electronic surveillance of all communications emanating from a law office. This lack of a corresponding provision in Title III weighs in favor of the State's argument that the third clause of *W.Va. Code* § 62-1D-9(d) must be read and interpreted within the context of the other two clauses of the statute, i.e., the third clause is meant to protect communications emanating from a law office that are attorney-client privileged in nature; the final clause is not meant to protect communications emanating from a law office that involve a lawyer engaging in criminal conduct.

Having determined that Title III does not contain an analogous provision to the third clause of *W.Va. Code* § 62-1D-9(d), we next examine the statute in light of the purpose and context of the other statutory provisions contained within the *West Virginia Wiretapping Act*. The purpose of Title III, which the *West Virginia Wiretapping Act* was patterned after, is to achieve the dual goals of "protecting individual privacy, while permitting limited government surveillance in accordance with uniform standards." *Mullens*, 221 W.Va. at 75, 650 S.E.2d at 174. These dual goals of Title III are applicable to the *West Virginia Wiretapping Act*. We find that these goals are not furthered by affording the third clause of *W.Va. Code* § 62-1D-9(d) the broad reading urged by Lawyer Hardison. Under Lawyer Hardison's suggested construction of the statute, the *West Virginia Wiretapping Act* would prevent law-enforcement surveillance of all communications emanating from a law office, including the alleged criminal communications that occurred in the present case – a lawyer selling cocaine. Further, if

17

this Court adopted Lawyer Hardison's suggested construction of *W.Va. Code* § 62-1D-9(d), law offices in West Virginia could become staging areas for criminal conduct. We find no support for this construction of *W.Va. Code* § 62-1D-9(d) in any corresponding provision of the *Act* or in any provision of Title III.

Finally, we note that when construing an ambiguous statute, "[w]e need not leave our common sense at the doorstep[.]" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989). This Court has long recognized that

> [i]t is the duty of a court to construe a statute according to its true intent, and give it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statue, when such construction would lead to injustice and absurdity.

Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925). Lawyer Hardison's suggested construction of *W.Va. Code* § 62-1D-9(d) would lead to such an absurdity – it would shield a lawyer, and any other person involved in criminal activity in a law office, from being subject to wiretapping or electronic surveillance simply because the criminal activity was occurring in a law office. We do not believe the Legislature intended such an absurd result. Rather, we find that the State's suggested interpretation of the third clause of *W.Va. Code* § 62-1D-9(d) – that it is meant to protect attorney-client privileged communications occurring within or emanating from a law office – is a sound and reasonable construction of the statute that is in accordance with the goals of the *West Virginia Wiretapping Act* and of Title III.

18

Based on all of the above, we hold that *W.Va. Code § 62-1D-9(d) of the West Virginia Wiretapping and Electronic Surveillance Act, W.Va. Code § 62-1D-1, et. seq.* [1987], is intended to prevent attorney-client privileged communications from being monitored by wiretapping or through electronic surveillance. The third clause of *W.Va. Code § 62-1D-9(d)*, considered in conjunction with the first two clauses of the statute, and within the *West Virginia Wiretapping and Electronic Surveillance Act* and Title III of the *Omnibus Crime Control and Safe Streets Act*, 18 U.S.C. § 2510, *et. seq.*, was intended to prohibit the interception of all attorney-client privileged communications "emanating from the place of employment of any attorney at law licensed to practice law in this state." The third clause of *W.Va. Code § 62-1D-9(d)* was not intended to prevent law-enforcement officers from intercepting wire, oral or electronic communications occurring within or emanating from a law office that involve criminal conduct.

Applying this holding to the present case, we find that the circuit court erred when it suppressed the audio recording made by the confidential informant. The conversation between the confidential informant and Lawyer Hardison should only have been suppressed pursuant to *W.Va. Code § 62-1D-9(d)* if it was attorney-client in nature. In Syllabus Point 2 of *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979), this Court set forth a three-factor test to determine whether the attorney-client privilege may be asserted:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the

19

attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential.

The second and third factors cannot be satisfied. Lawyer Hardison was not acting in his capacity as a lawyer during his April 6, 2012, conversation with the confidential informant. The confidential informant was not seeking legal advice from Lawyer Hardison; he was allegedly only seeking to purchase cocaine from him. Further, the confidential informant, having agreed to wear a recording device, did not intend that this conversation be kept confidential. Finally, the attorney-client privilege "belongs to the client." *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 372, n.21, 508 S.E.2d 75, 89, n. 21 (1998). The confidential informant, as the putative client in this case, has not asserted the privilege. Because the conversation was not attorney-client in nature, the circuit court erred by suppressing the audio recording under *W.Va. Code* § 62-1D-9(d). We therefore grant the State's requested writ.

## IV. Conclusion

For the foregoing reasons, we find that the State is entitled to the requested writ of prohibition to prohibit the circuit court from suppressing the audio recording made by the confidential informant. We therefore vacate the June 26, 2013, order of the Circuit Court of Raleigh County.

Writ Granted.

20